O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTG NETWORKS OF CALIFORNIA, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> CITY OF NEWPORT BEACH, CA, <br><br> Defendant(s). | CASE NO. SACV 10-1286 DOC (JCx) <br><br> **O R D E R GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are cross-Motions for Summary Judgment filed by Plaintiff NextG Networks of California, Inc. ("NextG") [17] and the City of Newport Beach, CA ("City") [12]. After considering the moving, opposing and replying papers thereon, as well as oral argument, the Court hereby GRANTS the City's Motion and DENIES NextG's Motion.

**I.  BACKGROUND**

This case concerns a city government's authority to deny construction of new telecommunications structures.  NextG is a "telephone corporation" and a "public utility" as defined by the California Public Utilities Commission. Undisputed Fact from Pl.'s Statement of

Undisputed Facts ("Pl.'s SOF"), ¶ 1-2.  NextG seeks to install and operate a series of antennas and associated structures within the City of Newport Beach, CA, in order to provide telecommunications services.  Administrative Record ("AR") 962-1060.  To accomplish this objective, NextG first explored the idea of attaching its antenna structures to City-owned street poles.  According to NextG, however, use of these poles proved cost-prohibitive.  The City requested a fee of $1,500 per month per pole, even though NextG estimated that the antenna structures would generate revenue of only $500 per month.  AR 747.  NextG thus proposed to build its own antenna towers.  It submitted seven permit applications to the City, requesting permission to install its own monopoles at designated locations.  All of NextG's proposed locations were on or near the Pacific Coast Highway, a scenic coastal route that travels along the Pacific Ocean.  NextG specifically requested the following:

      (1)      To install at 1101 East Coast Highway a 32-foot, free-standing monopole with an omni-directional antenna on top and an equipment box on the side. *Id.* at 717, 730-33.

      (2)      To install at 2346 East Coast Highway a 30-foot-3-inch, free-standing monopole with an omni-directional antenna on top and an equipment box on the side. *Id.* at 717-18, 730-31, 734-35.

      (3)      To install at 4501 West Coast Highway a 30-foot-3-inch, free-standing monopole with an omni-directional antenna on top and an equipment box on the side. *Id.* at 717-18, 730-31, 736-37.

      (4)      To install at 5100 East Coast Highway a 32-foot, free-standing monopole with an omni-directional antenna on top and an equipment box on the side. *Id.* at 718, 730-31, 738-39.

      (5)      To install at 6228 East Coast Highway a 26-foot-7-inch free-standing monopole with an omni-directional antenna on top and an equipment box on the side. *Id.* at 717, 730-31, 742-43.

      (6)      To install an omni-directional antenna and an equipment box on the side of an existing Southern California Edison utility pole located at 3215 Marcus Avenue.

|   |   |   |
|---|---|---|
| 1 | | *Id.* at 718, 730-31, 742-43. |
| 2 | (7) | To install an omni-directional antenna and an equipment box on the side of an |
| 3 | | existing Southern California Edison utility pole located at 202 Santa Ana Avenue. |
| 4 | | *Id.* at 718, 730-31, 744-55. |

On or about June 22, 2010, the City served Public Notices to all owners of property located near each of the proposed installation sites, setting forth a detailed description of the proposed installations and indicating that the City would be conducting a public meeting on July 6, 2010 to consider the applications. AR 669-706. The City received numerous letters and emails from residents related to NextG's permit applications, the overwhelming majority of which opposed the installations.[1]

The City held a public meeting on the permit applications on July 6, 2010. AR 815-873, 874-876. In advance of the hearing, City staff prepared a fourteen-page report describing NextG's overall proposed project, detailing each of the seven applications, summarizing city ordinances and analyzing each of the seven applications in conjunction with the applicable ordinances, attaching over 80 pages of supporting documentation (including photo simulations prepared by NextG of the proposed installations and numerous correspondence from residents and resident groups opposing the installations), and making recommendations to the City Council on each of the seven applications. AR 716-717. The staff report ultimately recommended denying the five applications for the new free standing monopoles and approving, with conditions, the other two applications. At the meeting, City staff, as well as three representatives from NextG, gave presentations and fielded questions from the City Council members. The City Council also heard comments from eleven members of the public, all of whom opposed the new installations. AR 815-873, 874-876.

---

[1] At oral argument, NextG took issue with the factual foundation of many residents' concerns, asserting that they rested on inaccurate descriptions of the proposed installations or that they expressed concerns regarding matters – such as health issues – that the City was not allowed to consider. The Court notes the residents' opposition not to suggest that the City adopted the residents' *reasoning* for opposing the monopoles, but rather simply to establish that public resistance to the poles existed.

A vote took place at the end of the meeting, wherein the City Council unanimously voted to adopt the recommendations of the staff report (to deny the five applications requesting new installations and to approve the other two applications on certain conditions).  City staff thereafter prepared resolutions setting forth the City's decision on each of NextG's applications, which the City Council formally adopted at a meeting on July 27, 2010.

Each of the resolutions denying NextG's applications for the five new towers included a summary of facts related to the application, a recounting of the proceedings conducted by the City Council, an articulation of the reasons for denial and the evidence relied on in reaching the City's decision. The stated reasons for denial – as well as the explanation of the evidentiary support behind the decision – were identical for each application.  The City offered the following six reasons in support of each denial:

(1) The detrimental visual effect that the proposed facilities would have on the public streetscape along the Pacific Coast Highway;

(2) NextG's failure to show that higher priority locations were either unavailable or not feasible;

(3) NextG's failure to show that installation on a new pole was necessary to provide service;

(4) NextG's failure to show that the lack of such a facility would result in a denial of service;

(5) NextG's failure to present evidence that an identified alternative was not feasible;

(6) The conflict between the proposed installations and the City's codified policy to use underground facilities whenever feasible and to prohibit new above-ground facilities in areas where facilities are currently undergrounded.

AR 923-942.

The City argues that each of these stated bases for denial were valid, in writing, authorized by law and supported by substantial evidence in the written record and that no reasonable jury could conclude otherwise.  NextG makes the opposite arguments.  Both parties move for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

## III. DISCUSSION

NextG asserts two causes of action against the City for: (1) violation of Section 332(c)(7)(B)(iii) of the Telecommunications Act, 47 U.S.C. § 332(c)(7) ("TCA"), and (2) violation of California Government Code Section 50030. Both parties move for summary judgment on each claim. For the reasons explained below, the Court finds that there is no genuine issue of material fact concerning whether the City violated Section 332(c)(7)(B)(iii) of the TCA. Reviewing the evidence in the administrative record, no reasonable jury could conclude that the City violated the TCA. The Court therefore GRANTS the City's motion for summary judgment on that claim and DENIES NextG's motion for the same. The Court declines to exercise supplemental jurisdiction over NextG's claims under Section 50030 of the California Government Code because resolution of this claim involves novel issues of California state law that are better left to the state courts.

### a. Section 332(c)(7)(B)(iii) of the Telecommunications Act

On the basis of the administrative record before the Court, no reasonable fact-finder could conclude that the City violated Section 332(c)(7)(B)(iii) of the TCA. Section 332(c)(7)(B)(iii) of

the TCA provides: "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." Because Congress, with the TCA, "intended that the traditional substantive prerogatives of local zoning authorities not to be disturbed," *id.* at 724, the Court must give considerable deference to a local government's decisions. *See also id.* at 725 ("Courts may neither engage in their own fact-finding nor supplant the local agency's reasonable determinations.") (internal citations and quotations omitted). Courts, however, are not rubber stamps: the decisions of local governments will not be upheld on the basis of "opaque, unelaborated rulings." *Id.* at 722.

In this case, no genuine issue of material fact exists regarding whether the City's denial decisions were in writing and supported substantial evidence in the record. No reasonable fact-finder could conclude that they were not.

### 1. "In Writing" Requirement

In the Ninth Circuit, local governments satisfy the "in writing" requirement of the TCA by "issu[ing] a written decision separate from the written record which contains sufficient explanation of the reasons for the decision to allow a reviewing court to evaluate the evidence in the record supporting these reasons." *MetroPCS*, 400 F.3d at 723. In *MetroPCS*, the Ninth Circuit held that San Francisco satisfied the "in writing" requirement when it "issued a five-page written decision, separate from the record, which summarized the facts of the dispute, recounted the proceedings it conducted, articulated its reasons [for denying the applications] and explained the evidentiary basis for its ruling." *Id.* The Circuit explained that "[w]hatever else might be said about the decision or its reasoning, it does contain sufficient explanation to enable judicial evaluation of the evidentiary support for its rationale." *Id.* Here, the City issued three-page written decisions (adopted as City resolutions) for each denied application, separate from the record, which summarized the facts of the dispute, recounted the proceedings conducted, articulated the reasons for the City's decision and referenced the evidentiary bases for its rulings. *See* AR 923-42. NextG, in fact, appears to concedes that the City satisfied the "in writing" requirement of the TCA, as NextG fails to contest this assertion in any of its moving papers.

1 NextG's lack of opposition is wise. No genuine issue of material fact remains regarding whether
2 NextG's denial decisions were "in writing," as required by the statute.

### 2.     Substantial Evidence Requirement

Courts have construed the "substantial evidence" standard as requiring that the local government's decision be (1) authorized by local law and (2) supported by a reasonable amount of evidence. *See Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 721 (9th Cir. 2009); *MetroPCS v. City and County of San Francisco*, 400 F.3d 715, 725 (9th Cir. 2005) ("[T]his Court may not overturn the Board's decision on substantial evidence grounds if it is authorized by applicable local regulations and supported by a reasonable amount of evidence."). With respect to the authorized by local law requirement, "[t]he TCA does not affect or encroach on the substantive standards to be applied under established principles of state and local law." *Id.* at 724. Accordingly, "[s]ubstantial evidence review does not create a substantive federal limitation upon local land use regulatory power." *Id.* Regarding the quantity of evidence required to satisfy the substantial evidence standard, courts have found that a local government must have "less than a preponderance, but more than a scintilla of evidence." *MetroPCS*, 400 F.3d at 725.

The decision of a local zoning board must be upheld if any of the provided grounds for dismissal are authorized by local law and supported by a reasonable amount of evidence. *Id.* at 726. The City thus may prevail in its motion for summary judgment even if a reasonable jury could find that the majority of the City's stated reasons for denial lacked merit – the City need only show that no genuine issue of material fact exists regarding *one* of its rationales for denial and that a reasonable jury would be required to find at least this one reason valid. In this case, no reasonable fact-finder could conclude that at least one of the City's stated bases for denial was not authorized by local law and supported by a reasonable amount of evidence.

### A.     Conflict with City Undergrounding Policy

Section 13.20.030 of the Newport Beach Municipal Code ("NBMC"), entitled "City Policies Regarding Use of the [Public Right of Way]," provides that "[w]henever existing facilities are located underground along a particular [Public Right of Way], new facilities must

1   be installed, at the company's sole expense, underground along that Public Right of Way."
2   NBMC § 13.20.030.  Section 13.20.030 further states that "[n]o new above ground facilities will
3   be allowed in areas where facilities are underground." *Id.*  NextG does not dispute that there is
4   substantial evidence in the record that NextG's applications proposed construction of new
5   above-ground poles in an area where facilities are currently located underground.

6         Unable to dispute the facts, NextG argues that another provision of the Newport Beach
7   Municipal Code – Section 15.32.070(F) – grants NextG an exemption from the undergrounding
8   requirements of NBMC § 13.20.030.  NextG is wrong.  By its terms, Section 15.32.070(F)
9   creates an exception only to "[Chapter 15.32] and any other resolution adopted pursuant to
10  Section 15.32.040," not to Section 13.20.030.  *See* NBMC § 15.32.070(F).  Chapter 15.32 of the
11  NMBC and Section 15.32.040 deal generally with the creation of underground utility districts,
12  authorizing the City Council to adopt resolutions declaring areas of the City "underground utility
13  districts" and ordering companies to relocate facilities located in this district underground.  *See*
14  NMBC §§ 15.32.010(B), 15.32.040.  It also makes it unlawful to erect above-ground poles or
15  other structures within these districts.  Section 15.32.070(F), however, exempts "antennae,
16  associated equipment and supporting structures, used by a utility for furnishing communication
17  services" from Chapter 15.32's reach.  As such, if the City had attempted to deny NextG's
18  permits on the basis of Chapter 15.32, the City's denial would not have been authorized by local
19  law.

20        The City's denial resolutions, however, make no mention of NMBC Chapter 15.32.
21  Rather, the City bases its denials on NBMC § 13.20.030, a provision of the NMBC that deals
22  specifically with public rights of way.  NBMC § 13.20.030 prohibits the installation of new
23  above-ground facilities ***on public rights of way*** – i.e. where NextG proposes to install its
24  monopoles – in districts where facilities are currently underground.  In contrast to Chapter 15.32,
25  which contains the exception discussed above, no exception to Section 13.20.030 exists.
26  NextG's proposed installations thus would have violated Section 13.20.030 even though they
27  would not have violated Chapter 15.32.
28        In an attempt to resist this conclusion, NextG argues that NMBC § 13.20.030 is not a

1  provision of substantive law but, rather, "only a general statement of policy." Next G's Motion
2  for Summary Judgment at 16. No reasonable fact-finder could agree. Section 13.20.030 makes
3  specific pronouncements, declaring where facilities "must be installed" and where they are "not .
4  . . allowed." NMBC § 13.20.030. Given this imperative language, NextG's attempt to recast
5  this provision as a mere statement of policy gains no traction.[2] Nor does NextG's assertion that
6  the City's interpretation of the Code "effectively eliminat[es]" Section 15.32.07(F). Contrary to
7  NextG's assertion, both NMBC § 13.20.030 and NBMC § 15.32.070(F) have independent
8  meaning under the City's reading of the statute. Section 15.32.070(F) exists to allow
9  construction of certain above-ground structures in underground utility districts, ***other than on***
10 ***public rights of way***. The text of Chapter 13.20 explains why public rights of way are subject to
11 more stringent restrictions than other areas within an underground district:

>    The public rights-of-way are unique public resources held in trust by
>    the city for the benefit of the public. These physically limited resources
>    require proper management by the City to maximize the efficiency and
>    minimize the costs to taxpayers, to protect against foreclosure of future
>    economic expansion because of premature exhaustion of the public
>    rights-of-way and to minimize the inconvenience to and negative
>    effects on the public from nontraditional uses of the public rights-of-
>    way.

NMBC § 13.20.010. It thus makes perfect sense that the exemptions granted by Section
15.32.070(F) would not extend to installations proposed on public rights of way.

NextG has failed to create a genuine issue of material fact regarding whether the City's
decision to deny its permit applications on the basis of NMBC § 13.20.030 was proper. No

---

[2]At oral argument, NextG questioned how, if Section 13.20.030 is read to establish mandatory rules against aboveground structures, the City would be allowed to maintain its own street poles along the public rights of way. Section 13.20.030, however, does not require that currently-existing aboveground facilities be undergrounded. It simply forbids the construction of "new" aboveground facilities. NMBC § 13.20.030.

reasonable jury could conclude that it was not. The City is entitled to summary judgment on this claim.

### B. Aesthetic Concerns

As explained above, only one of the City's stated bases for denial of NextG's permit applications needs to be valid. Because the Court has already concluded that no reasonable jury could reject the City's finding that NextG's proposed installations conflicted with NMBC § 13.20.030, the Court need not address the City's other rationales for denying NextG's permits. The Court nevertheless notes that the City had other bases for denial that would entitle it to summary judgment on NextG's claim under the TCA.

For example, the City determined that NextG's proposed installations would exert negative aesthetic effects. A provision of the NBMC, Section 15.70.070(F)(3), forbids the construction of telecommunications facilities that would "result in conditions which are materially detrimental to nearby property owners, residents, and businesses, or to public health or safety." The City was entitled to determine that degrading the aesthetic of the scenic, coastal area near the Pacific Coast Highway would prove "materially detrimental" to nearby owners, residents, and businesses. The Ninth Circuit has previously stressed the importance of aesthetic concerns. In *Palos Verdes Estates*, the Circuit stated:

> The experience of traveling along a picturesque street is different from the experience of traveling through a [utility structure], and we see nothing exceptional in the City's determination that the former is less discomforting, less troubling, less annoying and less distressing than the latter. . . . [T]he 'public use' of rights-of-way is not limited to travel. It is a widely accepted principle of urban planning that streets may be employed to serve important social, expressive and aesthetic functions.

*Id.* at 723.

In this case, the City was entitled to determine that degrading the aesthetic of the Pacific Coast Highway area decreases the public's ability to enjoy this area. This decreased enjoyment, in turn, quite obviously risks damage to property values and has other "materially detrimental"

effects to nearby owners, residents and businesses. The City's decision to deny NextG's permit applications was thus authorized by local law. It was also supported by substantial evidence in the written record. In reaching its decision, the City relied on photo simulations prepared by NextG of the proposed installations and numerous correspondence from residents and resident groups, both by mail and in person, opposing the installations on aesthetic grounds. *See id.* at 724 (decision to deny application on aesthetic grounds "easily satisfie[d]" the substantial evidence standard because the city "reviewed propogation maps and mock-ups of the proposed [installations], [as well as] a report that detailed the aesthetic values at stake . . . [and] public comments"). As the Ninth Circuit stated in *Palos Verdes Estates*, "public rights-of-way are the visual fabric from which neighborhoods are made." *Id.* In enforcing strict undergrounding requirements on selected public rights of way, the City has made great efforts to protect its neighborhoods' "visual fabric." If the Court is to be properly deferential to a local government's zoning authority, the Court must respect these efforts.

### C. Other Reasons for Denial

In addition to the aesthetic concerns discussed above and the conflict with City undergrounding policy, the City provided four other reasons for denying NextG's permit applications. Each of these four reasons in some way implicates the question of whether feasible alternatives existed to NextG's proposals. One alternative suggested by the City was the use of City-owned street poles. In its second claim for relief, NextG asserts that the City's fees for use of its street poles violate California Government Code § 50030. Consequently, NextG contends that use of these City-owned poles is not a feasible alternative to NextG's proposed installations. As is explained in more detail below, given the novel issues of state law presented, the Court finds it wise to decline to exercise supplemental jurisdiction over NextG's claim for violation of California law. Because discussion of the City's four remaining rationales for denying NextG's permit applications might require the Court to analyze the reach of California Government Code § 50030, and because the Court need not address the viability of these rationales in order to enter summary judgment in favor of the City, the Court declines to consider the City's final four bases for denying NextG's permits.

**b.     California Government Code § 50030**

NextG's second cause of action asserts a violation of California Government Code § 50030 ("Section 50030"). Section 50030 provides, in pertinent part:

> Any permit fee imposed by a city . . . for the placement, installation, repair, or upgrading of telecommunications facilities such as lines, poles, or antennas by a telephone corporation that has obtained all required authorizations to provide telecommunications services from the Public Utilities Commission, shall not exceed the reasonable costs of providing the service for which the fee is charged and shall not be levied for general revenue purposes.

NextG asserts that the fees requested by the City for use of its street poles violate this provision. The City, by contrast, contends that the legislative history behind Section 50030 indicates that this provision applies only to fees levied for access to the public rights of way, not to fees charged for use of a City-owned facility.

There is very little case law related to Section 50030. The only case to provide meaningful discussion of the statute, *Williams Communications LLC v. City of Riverside*, 114 Cal. App. 4th 642 (2003), does not address the question at issue here. Faced with similar circumstances, other federal courts have declined to exercise supplemental jurisdiction over claims under Section 50030. *See, e.g. Qwest Communications Corp. v. City of Berkeley*, 146 F. Supp. 2d 1081, 1101-1102 (N.D. Cal. 2001) (declining to exercise supplemental jurisdiction over claims under Section 50030 in light of "ambiguity and novelty" of state law questions). *See also* 28 U.S.C. 1367(c)(1) (district courts may decline to exercise supplemental jurisdiction if the claim raises a novel or complex issue of state law). The instant Court follows suit. The Court declines to exercise supplemental jurisdiction over this claim.

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

## IV. DISPOSITION

For the foregoing reasons, the Court hereby GRANTS the City's motion for summary judgment on NextG's claims under Section 332(c)(7)(B)(iii) of the TCA. The Court declines to exercise supplemental jurisdiction over NextG's claims under California Government Code § 50030. This claim is hereby DISMISSED for lack of subject matter jurisdiction.

IT IS SO ORDERED.

DATED: February 18, 2011

_____
DAVID O. CARTER
United States District Judge